CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 17 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES WHITNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:09cv140 |
| | ) |
| TRACY RAY, et al., | ) |
| | ) By: Hon. Michael F. Urbanski |
| Defendants. | ) United States Magistrate Judge |

## REPORT AND RECOMMENDATION

This matter is before the court on motion by defendants, Red Onion State Prison Warden Tracy Ray ("Warden Ray"), Correctional Officer B. Large ("Officer Large") and Correctional Officer E. Hess ("Officer Hess"), for summary judgment. Plaintiff, James Whitner ("Whitner"), is an inmate in state custody. He filed suit under 42 U.S.C.A. § 1983 claiming that Officers Large and Hess used excessive force against him, and that Warden Ray is vicariously liable for their conduct. Because Whitner's injuries are de minimis, and because the videotape of the incident makes it abundantly clear that the officers did not use excessive force, the undersigned recommends that the defendants' motion for summary judgment (Dkt. # 12) be **GRANTED**. As such the court need not reach the defendants' qualified immunity claim, which is moot. Additionally, the undersigned recommends that Whitner's complaint (Dkt. # 1) be **DISMISSED**.

### I.

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). Where a complaint is verified, and based on personal knowledge, it may be treated as an affidavit at summary judgment. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (court need not accept plaintiff's "'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations'" (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). Plaintiff has placed a verified complaint in the record. (Dkt. # 1.) Additionally, Whitner's response in opposition to the motion for summary judgment is verified. (Dkt. # 17.) Thus, the undersigned must consider the allegations, rooted in personal knowledge, set forth in those documents.

However, the record also contains an authenticated video of the alleged assaults. "Where . . . the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008). Whitner has not challenged the videotape.

### A. Facts in Plaintiff's Verified Complaint and Response in Opposition

Whitner alleges that he was the subject of threats and harassment from correctional officers for months prior to being assaulted on January 9, 2009. Whitner claims he made a variety of informal and formal complaints, but Warden Ray failed to intervene. (Dkt. # 1 at 9.) Specifically, Whitner claims he filed complaints with Warden Ray on November 6, 2008,

November 10, 2008 and December 3, 2008, describing threats Officer Large made to beat up Whitner. Id. at 7-8. Additionally, on November 24, 2008, Whitner alleges in his verified complaint that he filed a complaint stating that Officer Large and one Officer Barrett, who is not a party to this suit, denied him recreation. Id. at 7. Six days later, on November 30, 2008, Whitner complained that Officer Large turned off Whitner's power, and that Officers Large, Hess and an Officer Welch deprived Whitner of food trays. Id. Whitner says he also followed these complaints up with grievances and appeals to the Regional Director of the state prison system. Id. at 8-9.

Whitner alleges in his verified complaint that on January 9, 2009, Correctional Officers Hess and Large escorted Whitner from B-3 Pod to B-6 Pod. Id. at 10. At the time, Whitner was handcuffed and in shackles. Id. at 6. According to Whitner, the officers told him that they finally had the chance to "beat [Whitner's] ass." Id. at 10. As Whitner entered the B-6 Pod, Officers Hess and Large allegedly "continuously" slammed Whitner's face into the entryway doorpost and assaulted him. Id. at 2-3. Whitner also claims that they slammed him into the floor and beat and assaulted him. Id. at 10. As a result of this, Whitner states that he suffered a lacerated chin requiring four stitches, a blood-filled blister on his lip, a chipped tooth and lacerations to his knees. Id. at 3.

Plaintiff filed a complaint directed to Warden Ray about Correctional Officers Hess and Large on January 21, 2009. Id. Whitner complains that Warden Ray delegated a Lieutenant S. Harrison to respond to the complaint. Id. Whitner alleges that Lt. Harrison responded on February 2, 2009. Id. at 4. Whitner complains that Lt. Harrison indicated that Whitner was disruptive and that officers were required to use force against him. Id.

Whitner filed an additional complaint and a Level 1 Grievance on February 8, 2009. Id. Warden Ray responded on March 11, 2009, finding no fault with the correctional officers' conduct. Id. Whitner claims he then appealed to Regional Director John Garner, who also upheld the decisions. Id. at 4-5.

**B.     Facts in Defendants' Affidavits**[1]

According to the defendants, informal grievances must be addressed at the facility level and may not be referred to departments outside of the facility. Ray Aff. at ¶ 4. In the months prior to the January 9, 2009 incident, Officers Hess and Large claim that were contacted and asked to respond to a number of informal complaints that Whitner filed against them. Officer Hess states that he was contacted by Lt. McCoy to respond to an informal complaint filed by Whitner, claiming that Hess had denied Whitner his food tray on November 28, 2008. Hess Aff. at ¶ 4. Officer Hess responded that he had not denied Whitner a food tray, but rather that Whitner had refused the food tray. Id. Officer Large states that he was also contacted by Lt. McCoy regarding an informal complaint alleging that Officer Large threatened Whitner while Whitner was in the shower on November 6, 2009. Large Aff. at ¶ 4. Officer Large responded that Whither had refused to leave the shower and that Officer Large had called a Sergeant Resnick and ordered Whitner to go back to his cell. Id. According to Officer Large, Whitner returned to his cell, and Officer Large did not threaten Whitner. Id. Officer Large also denied threatening Whitner on November 10, 2009, withholding Whitner's dinner tray on that same date and on November 28,

---

[1]For ease of reference, defendants' exhibits are referred by the name of the person swearing the affidavit. Exhibit 1 is the "Hess Aff." Exhibits 2 through 5 are the affidavits of Officer Large, Institutional Investigator Adams, Warden Ray and Nurse Phipps, respectively. All exhibits are at Dkt. # 13.

4

2008. Id. at ¶¶ 5-7. Rather, Officer Large responded that Whitner had refused food trays on multiple occasions. Id. at ¶ 7.

On December 1, 2008, defendants state that Whitner filed a grievance claiming that Officer Large threatened Whitner and denied him his dinner tray on November 10, 2008. Ray Aff. at ¶ 5. Assistant Warden R. Rowlette contacted Officer Large, who completely denied the allegations. Id. at ¶ 7. Defendants contend that the grievance was found to have no merit and to be unfounded. Id. The Assistant Warden reminded Whitner that he was in a safe, controlled environment with cameras monitored twenty-four hours a day. Id. Whitner appealed and again his claims were determined to be unfounded. Id. at ¶ 8. By the defendants' account, the same grievance appeal procedure was followed for Whitner's grievance claiming that officers denied him his meals. Id. at ¶ 9. Again, his allegations were declared unfounded, and it was determined that staff had not denied Whitner his meals. Id. at ¶ 10-11; see also Attachments A-D to Ray Aff.

On January 9, 2009, defendants claim that Officers Large and Hess escorted Whitner from the B-3 Pod to the B-6 Pod. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. According to defendants, at the front door, Whitner became disruptive and told the officers that there was "no way in hell" he was going to go between the pods. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. Defendants claim that Whitner refused to walk, and the officers placed him against the wall at the front door. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. Whitner refused to walk again, the defendants note, and Whitner dropped to his knees. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. The officers placed Whitner back on his feet and continued into the vestibule of the pods. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. In the vestibule, the defendants state that Whitner tried to lunge forward, attempting to pull away from Officers Large and Hess. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. In their attempts to maintain control over Whitner,

both Officers Large and Hess contend that they fell to the ground. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. The two officers claim they held Whitner in place on the ground and contacted Lt. McCoy. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. Lt. McCoy arrived on the scene, operating a handheld video camera. Hess Aff. at ¶ 5; Large Aff. at ¶ 8. According to defendants, officers then escorted Whitner to medical for assessment. Hess Aff. at ¶ 5.

A jail nurse states that when Whitner arrived at the medical department, he had blood on the left side of his face, and his ear and jaw area. Phipps Aff. at ¶ 4; Attachment A to Phipps Aff. After the blood was cleaned off, medical personnel found one laceration on the front jaw and a blood blister was on Whitner's bottom lip. Phipps Aff. at ¶ 4; Attachment A to Phipps Aff. According to medical records, he also had abrasions on both knees. Phipps Aff. at ¶ 4; Attachment A to Phipps Aff. Whitner also claimed to have a chipped tooth, though the medical department states it could not determine when the tooth was chipped. Phipps Aff. at ¶ 4; Attachment A to Phipps Aff. The institutional physician checked Whitner's chin, and sutured the laceration. Phipps Aff. at ¶ 4.

Following the incident on January 9, 2009, defendants note that Whitner filed a grievance, claiming that Officers Large and Hess slammed him into a doorpost, causing him to fall to the floor. He also claimed that they rammed him against a sliding door. Ray Aff. at ¶ 13; Attachment E to Ray Aff. Warden Ray states that he reviewed the documentation of the incident and determined that Whitner suffered injuries from his own disruptive behavior and refusal to follow directions. Id. at ¶¶ 13-17; Attachment E to Ray Aff. He also noted that Whitner had refused to discuss the incident with an institutional investigator. Ray Aff. at ¶ 15; Attachment E to Ray Aff.

Whitner appealed to the Regional Director's office, which also labeled Whitner's grievance unfounded. Id. at ¶ 17; Attachment E to Ray Aff.

### C. Videotape from Surveillance Cameras

The incident on January 9, 2009 was captured by two cameras posted in the B-4, 5 and 6 Pods entrance area and the B-4, 5 and 6 Pod vestibule. Adams Aff. at ¶ 3. To get to the vestibule, a prisoner must first pass through a door into the entrance area, and then may enter the vestibule.

The tape shows that an officer opened a door to the B Pods entrance area. Whitner's lower body and torso were framed in the doorway, standing upright. Whitner appeared to be coming into the entrance area, when he suddenly veered to one side. Two officers appeared slightly behind Whitner, one on each side. The officers each were holding onto Whitner, but also were bending far forward, as if losing their balance. The door closed; Whitner and the officers could not be seen.

The camera showed the door reopen. Whitner came into the entrance area. He walked slightly ahead of the two officers. He again appeared to be headed to a doorway, when he suddenly veered to the side of the door. The officers held him there momentarily, against a wall. Then Whitner twisted away from the officers. He dropped vertically, and the two officers looked as if they were going to fall over with him. The officers moved in closer and a third officer came to assist them. Whitner then stood up straight. The third officer moved away, and Whitner and the two escorting officers exited the B Pod entrance area.

The B Pod vestibule camera captured Whitner and the two officers as they walked into the vestibule. Whitner again walked ahead of the officers. Near the center of the room, Whitner fell forward with the lower part of his body falling first. The officers, who each held a portion of

Whitner's upper body, leaned forward, clearly losing their balance and falling as well. The two officers then immediately crouched over Whitner, with one on his back and one to his right side.

It is clear from the video that the officers did not beat Whitner. Whitner's face could not be captured by the camera, but his lower body was still. The officers moved their hands and arms around in small movements. Additional correctional officers came into the vestibule. They then wrapped a cloth around Whitner's head and slowly brought him back to standing. The entourage of officers then escorted Whitner out of the vestibule, back into the entrance, and then out of the entrance and out of view without incident.

## II.

The Eighth Amendment's prohibition on "cruel and unusual punishments" bars "the unnecessary and wanton infliction of pain" on prisoners through the use of excessive force. Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994) (quoting Whitler v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted)). A plaintiff must make a threshold showing of harm in order to make out an excessive force claim. "'Even if there is a genuine issue of material fact as to whether Defendants behaved maliciously or sadistically after the need for force has subsided,' plaintiff must also demonstrate that the injuries were 'more than de minimis' or that 'the force used [is] of a sort repugnant to the conscience of mankind ... or the pain itself [is] such that it can properly be said to constitute more than de minimis injury.'" Carr v. Deeds, 453 F.3d 593, 605-06 (4th Cir. 2006) (quoting Norman, 25 F.3d at 1263);[2] see Hudson v. McMillian, 503 U.S. 1, 9-10 (1992); Ingraham v. Wright, 430 U.S. 651, 674 (1977).

---

[2]Carr was decided under the excessive force prohibition contained in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. 453 F.3d at 605. However, the Fourteenth and Eighth Amendment jurisprudence grow from the same doctrine. See, e.g., Riley v. Dorton, 1159 F.3d 1159, 1166 (4th Cir. 1997).

8

Force is excessive when it causes greater than de minimis injury and was not used in "a good faith effort to maintain or restore discipline" but was used "maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 7 (internal quotations omitted). Thus, in evaluating an excessive force claim, the court must look to the alleged injuries, and whether the force applied was proportionate to the situation.

Whitner cannot meet the threshold issue of showing a constitutionally cognizable injury because his injuries are de minimis. Whitner alleges that he suffered lacerations to his chin, requiring four stitches, a blood blister on his lip, a chipped tooth and lacerations to his knees. The parties dispute whether Whitner's chipped tooth was the result the incident at issue. Irregardless, these are minor injuries that do not rise to the level of a constitutional harm, because they do not evidence serious pain or long term effects on Whitner's health or daily life. Rather, the pain from a busted lip, skinned knees and a chipped tooth is minor and passing. As such, this matter is also distinguishable from incidents that rise to the level of a constitutional harm by virtue of the pain inflicted, such as a wrongful tasering. See, e.g., Orem v. Rephann, 523 F.3d 442, 447-48 (4th Cir. 2008). Accordingly, the undersigned recommends that Whitner's claims be dismissed.

The undersigned's recommendation that these injuries be found de minimis is consistent with the conclusions of several other district courts in this circuit that have found similar injuries to be de minimis. See Benson v. Deloach, No. 8:09-00041, 2009 WL 3615026, at *9 (D.S.C. Oct. 28, 2009) (where plaintiff alleged severe beating, but required only four stitches, plaintiff's claim failed at summary because showed only de minimis injury); Chilton v. Clayborne, 3:08cv615, 2009 WL 2634166, at *4 (E.D. Va. Aug. 25, 2009) (superficial abrasions on left arm and scrapes on left high and thigh de minimis injury insufficient for excessive force claim to survive summary

9

judgment). Accordingly, the undersigned recommends that the claims against Officers Hess and Large be dismissed.

In the alternative, Whitner's claims should be dismissed against Officers Hess and Large because they did not use excessive force on Whitner. There is no material issue of fact as to the force used by Officers Hess and Large because the video included in the record corroborates the officers' accounts, revealing that Whitner acted disruptively in the minutes before the alleged beating. This directly contradicts Whitner's account. Additionally, the video shows that the officers did not slam Whitner against a wall or doorway, or beat him. Thus, Whitner's account does not have to be credited at summary judgment, though it is sworn. Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008).

The video reveals that Whitner was continually disruptive, and that Whitner threw himself to the floor. At the beginning of the video, Whitner attempted to pull away from Officers Hess and Large, moving ahead of them and falling to his knees. Thus, the officers were or should have been aware that Whitner was trying to escape their control. The officers at one point held Whitner briefly against a wall, but this was a momentary, small use of force was to attempt to regain control over Whitner. Indeed, such minimal force was insufficient, as after being held against the wall, Whitner went to his knees again, nearly leaving the officers' control.

Additionally, the video shows that Whitner fell to the ground, rather than being thrown by the officers. The video shows that the lower part of Whitner's body fell first. This evidences that the officers did not push Whitner to the ground, but rather attempted to hold him up, as they grasped his arms. However, the officers were unable to keep Whitner upright, and they also fell to the ground.

Once on the ground, the officers did not beat Whitner, as he claims, but rather attempted to maintain control over a prisoner who had engaged in a steady course of disruptive behavior. One officer straddled Whitner's back, while another crouched to Whitner's right side. Though Whitner's head is obscured at points in the video, the two officers are shown making short movements that are not consistent with the movement necessary to beat someone. Additionally, the blood on Whitner's face was on the left side of his head, and no officer was on Whitner's left. Rather, one officer sat on his back and another to his right. While it is possible that an officer could reach over and beat the opposite side of a person's body, the video reveals no such thing. Moreover, after falling to the ground, Whitner's lower body was still. One would expect that a person being beaten would squirm or move, but Whitner makes no such movement. Thus, it is clear that the officers did not beat Whitner.

Rather, the video demonstrates that the officers used minimal force to hold Whitner in place, despite his myriad attempts to get free of their control. Whitner argues that he was not a threat, because he was in shackles. However, even though Whitner was in restraints, the video makes it clear that he repeatedly attempted to evade their control. In short, the video confirms that no excessive force was used against Whitner by the officers. As such, the undersigned recommends that his claims be dismissed.

Because there is no constitutional injury, the undersigned also recommends that the claims against Warden Ray be dismissed. Whitner claims that Ray violated § 1983 by failing to restrain Officers Hess and Large, after Whitner filed grievances alleging that the correctional officers had retaliated against him and threatened him. Additionally, Whitner complains that Warden Ray used others to respond to some of his complaints, rather than responding directly. Supervisory

liability under § 1983 may not be premised on respondeat superior, rather § 1983 requires a showing that the defendant was personally at fault. Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds, County of Riverside v. McLaughlin, 500 U.S. 44 (1991); Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1982). "The plaintiff, of course, assumes a heavy burden of proof in supervisory liability cases." Slakan, 737 F.2d at 373. A prison official may be charged with liability of his or her subordinates when "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries [the subordinates] inflict" on prisoners. Id. at 372. However, because there was no constitutional injury here, Ray cannot have helped cause a cognizable injury. Additionally, Whitner's complaint fails to state a claim in this regard, as there is no right to have Warden Ray respond personally to every complaint. Accordingly, Whitner's claims against Ray also fail, and the undersigned recommends that Whitner's entire complaint be dismissed.[3]

## III.

Accordingly, the undersigned recommends that defendants' motion for summary judgment on the issue of excessive force be **GRANTED**. Given this finding, there is no need for the court to reach the issue of qualified immunity, as it is moot. Additionally, the undersigned recommends

---

[3]Whitner's complaint contains two other factual allegations that the defendants do not treat as raising independent claims. Construing them as separate claims, the undersigned finds Whitner fails to state claims upon which relief may be granted and recommends that the entirety of his complaint be dismissed. Specifically, Whitner alleges that he has been occasionally deprived of food trays or that his power in his cell has been turned off. Whitner's complaint indicates few specific instances of deprivation. Prisoners are entitled to nutritionally adequate food. However the occasional loss of a meal does not implicate Whitner's health. See Bowman v. Jones, No. 7:07-cv-91, 2007 WL 869236, at *2 (W.D. Va. Mar. 20, 2007). Thus he has no constitutional claim. Similarly, prisoners have no constitutional right in the conditions of their confinement absent "atypical and significant hardship." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Whitner has alleged no such hardship, and so his claim regarding the power in his cell also fails.

that Whitner's complaint be **DISMISSED** and that this matter be **STRICKEN** from the active docket of the court.

The Clerk is directed to transmit the record in this case to Honorable Glen E. Conrad, United States District Judge. Plaintiff is reminded that pursuant to Rule 72(b), he is entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is directed to send copies of this Report and Recommendation to plaintiff.

Enter: This 17th day of February, 2010.

Michael F. Urbanski
United States Magistrate Judge